Carroll
No. 88-191

CONDOS EAST CORP.

v.

THE TOWN OF CONWAY & a.

December 8, 1989

*Sumner F. Kalman*, of Plaistow, by brief and orally, for the plaintiff.

*Upton, Sanders & Smith*, of Concord (*Russell F. Hilliard* on the brief and orally), for the defendant.

THAYER, J. The Town of Conway, defendant below, appeals from an order of the Superior Court (*O'Neil*, J.) reversing the decision of the Conway Planning Board (the board) denying plaintiff's subdivision application. For the reasons that follow, we affirm.

On July 17, 1985, Condos East Corp. (Condos), through its president, Daniel Zappala, submitted an application for subdivision approval of a 46.25-acre tract of land located in North Conway, proposing to construct ninety-six condominium units. The plans for this recreational condominium community, slated to be known as "Northbrook Resort," call for the access road to the development to form a loop through the site and have two intersections on Ledgewood Road, a rather steep, dead-end, town road. The sole access route to and from the proposed site would be along Ledgewood Road to New Hampshire Route 16.

From the outset, the board expressed concern that Ledgewood Road would be unable to provide sufficient access to the development as planned, that a second access was the only solution available and, therefore, that a second access should be required. It questioned whether the physical condition and configuration of the road could safely accommodate the additional traffic that the condominium residents would generate. The board further worried that, in the event Ledgewood Road became impassable due to weather conditions or some kind of accident on the roadway itself, emergency vehicles would be unable to respond to calls from condominium residents. These specific concerns were continually raised and addressed at subsequent board meetings. In fact, the board discussed, yet ultimately rejected, the possibility of acquiring land for a second access route by exercising the town's power of eminent domain. The developer, Mr. Zappala, also attempted to purchase privately additional land for a second access, but was unsuccessful in his efforts. A second access route to the proposed development simply was not, and is not, a viable option.

Recognizing that there could be no second access, the plaintiff, in an effort to alleviate the board's safety concerns regarding Ledgewood Road, retained the services of Donald Rhodes of Holden Engineering & Surveying, Inc., requesting that Mr. Rhodes conduct a feasibility study in order to determine the adequacy and safety of the single proposed access. After a thorough review of the

matter, Mr. Rhodes recommended that certain improvements to the road be made, including reconstruction of the storm drain system and substantial widening of the road and its shoulders. He concluded that once these improvements were made, Ledgewood Road could safely carry the increased volume of traffic which would result from the proposed development. He determined that "a 32 foot wide roadway, with curbing and a closed drainage system, would provide the safety benefits of the divided roadway within the constraints of the existing right of way." Perhaps more importantly, he opined that "[a]n accident or a stuck vehicle would be unlikely to block the entire 32 foot roadway so that emergency vehicles could not get through." Mr. Rhodes was clearly of the opinion that the "widening of the roadway [from 20] to 32 feet [would] meet the emergency access needs of the Ledgewood Road area." It is noteworthy that Mr. Zappala was ready and willing to make the necessary improvements and incur the costs of upgrading Ledgewood Road so that it would conform with Mr. Rhodes's specifications.

The board, however, was unwilling to make its decision regarding subdivision approval based only upon the findings of the plaintiff's expert. Therefore, it was agreed that a completely neutral, unbiased academician would be asked to conduct a study similar to that of Mr. Rhodes. This second expert, Professor Paul J. Ossenbruggen of the University of New Hampshire, was chosen by the board and paid by Condos. Basing his opinion upon an inspection of Ledgewood Road and other roads with similarly steep grades, an analysis of safe stopping distance, an investigation of relevant accident records, a review of available safety literature, and the development of a risk assessment model, Professor Ossenbruggen determined that "the addition of 96 condominium units [would not] pose an unreasonable risk to current and future users of Ledgewood Road."

On the issue of safety, the board received additional input from a third individual, LeeJay Feldman of North Country Council, Inc., who was of the "opinion that the 96 units [would] not be detrimental to the existing system in any way in terms of the traffic." He agreed with Professor Ossenbruggen and Donald Rhodes that "Ledgewood [Road] is a safe street and in no way a danger to the residents traveling on it." Simply put, Donald Rhodes, Paul Ossenbruggen, and LeeJay Feldman all were convinced that a single access to "Northbrook Resort" by way of Ledgewood Road would not create a hazard either to the public safety or to the road itself.

In the face of this expert advice, however, the board denied Condos's application by a vote of 3–2, "primarily on the grounds that access from Route 16 was insufficient and inadequate absent a second access, at least for emergency purposes, and that the development was unsuitable due to exceptional danger to health and peril from fire due to excessive slope of the access road." Clearly dissatisfied with the adverse decision of the board, Condos filed suit in the superior court, alleging that the board's decision was illegal, unreasonable, and made with malice and bad faith. Coupled with this statutory appeal was a claim for damages against the Town of Conway and the three individual members of the board who voted to deny plaintiff's application. The trial court severed the damage claim from the statutory appeal; therefore, no issues relevant to the damage claim are currently before us.

The trial court did not hear further testimony on the matter, but did view the property in question and entertain the arguments of counsel. In addition, the court had before it the record of the board's proceedings pertaining to Condos's application, as well as the complete transcripts of the relevant board meetings. Basing its decision on this information, and employing the correct standard of review as set forth in RSA 677:15, V, the trial court found "by a balance of probabilities that the planning board decision [was] unreasonable and unsupported by the evidence in the record." Therefore, it reversed the board's decision to deny approval of the subdivision application.

The Town of Conway now appeals to this court seeking reversal of the trial court's decision. It claims that the board's decision was neither unlawful nor unreasonable and that a review of the record more than adequately reflects evidence to support it. In support of its position, the defendant points to the board's alleged past practice of requiring a second access for developments similar to "Northbrook Resort" and to the supposed grade problems of Ledgewood Road. The defendant further argues that the experts' conclusions were unsound in that they did not address the steepness of the road or the fact that Ledgewood Road is a dead-end.

■ Before turning to the merits of the case, we pause briefly to note the applicable standard of review. The law is well settled; "[i]n reviewing a decision by the superior court the standard for review for this court is not whether we would find as the trial court did, but whether the evidence reasonably supports the finding." *Cutting v. Town of Wentworth*, 126 N.H. 727, 728, 497 A.2d 839, 840 (1985) (citing *Durant v. Town of Dunbarton*, 121 N.H. 352, 357, 430 A.2d 140, 144 (1981)). We focus our inquiry on "whether a

reasonable person could find as the trial court did." *Restaurant Operators, Inc. v. Jenney*, 128 N.H. 708, 710, 519 A.2d 256, 258 (1986); *see also Nadeau v. Town of Durham*, 129 N.H. 663, 666, 531 A.2d 335, 337 (1987). Therefore, "[o]n appeal, we will uphold the trial court unless its decision is not supported by the evidence or is legally erroneous." *Id.*

We now turn our attention to the particular facts of the current controversy. Although the defendant concedes, as it must, that no zoning ordinance provision or site plan review regulation mandates a second access, it argues that the board was justified in denying the plaintiff's application because the board has a consistent past practice of requiring a second access in cases similar to that of "Northbrook Resort." We need not address the legal ramifications of such a position because we find it to be factually inaccurate. In a memorandum entitled "Research of previous second access requests by the Conway Planning Board to be used in conjunction with Ledgewood Road Development Area," Ed Bergeron, of H. E. Bergeron Civil Engineers, determined only "that the Planning Board has requested a second access for all major traffic generators and has been successful in obtaining it for most developments."

Mr. Bergeron reviewed five previous subdivisions in the town of Conway: Conway Heights, the development in Crown Ridge, Settlers Green, Millbrook & Pinewood Developments and the Forcier Development. For at least three of these five developments, namely, Crown Ridge, Settlers Green, and Millbrook & Pinewood Developments, the board's request that a second access be provided did not present any problems. The developers readily acquiesced in the requests because second accesses were reasonable, viable options. Conway Heights, although consisting of only forty-four units, posed problems more similar to those posed by the "Northbrook Resort" situation in that it was to be located on a dead-end street which exceeded the 1000-foot length limit. The planning board requested that alternatives be investigated so that a dead-end road of that length could be avoided. Because the development was hemmed in by abutters and a protective well radius, the Conway Heights subdivision was approved *without* a second access. Finally, the Forcier Development, located at the end of a substandard, dead-end road, was reviewed by Mr. Bergeron. Interestingly enough, in this case the planning board gave the developer two options, either to improve the dead-end road to an acceptable standard or to provide a second access. It is particularly noteworthy that the planning board seemed willing to accept one access as long as it was a suitable road.

It is perfectly clear that, contrary to the defendant's position that the board has a consistent past practice of requiring a second access, it simply has a consistent past practice of requesting a second access, yet is consistently open to discussion concerning alternatives when the situation presented so dictates. There is no possibility of obtaining a second access route to "Northbrook Resort." This option was thoroughly investigated and ultimately rejected. The developer, however, has offered to upgrade the condition of Ledgewood Road, an option that the board itself suggested to the Forcier developer. In light of the fact that the board approved the Conway Heights development without a second access and suggested that the Forcier group upgrade the single access route available to it, we simply cannot conclude that the board has a consistent past practice of requiring a second access. Therefore, we need not address the issue of what effect, if any, an established consistent past practice would have on the court's decision in this case.

Defendant also argues that "the serious grade problems with the dead-end road serving the site" support the board's decision to deny the subdivision application. It takes this position even though Condos's expert, Mr. Rhodes, Mr. Feldman of North Country Council, Inc., and defendant's own expert, Professor Ossenbruggen, all agree that the configuration and condition of Ledgewood Road, once improved to their specifications at the developer's expense, will not pose any danger to the public health or safety. The defendant attempts to justify its complete disregard for the opinions of these experts by stating that the experts did not address the steepness and dead-end aspects of Ledgewood Road. This position is completely untenable. Both Mr. Rhodes and Professor Ossenbruggen personally viewed the site. They could not help but take into account the physical attributes of the proposed access. Moreover, in his report, Mr. Rhodes set forth the specific configuration of the roadway. He noted that Ledgewood Road

"from NH 16 to the access road [the loop road through the actual development site] has a 20 foot or greater asphalt surface traveled way and asphalt surface shoulders of variable width. The horizontal alignment is straight. The grade rises at an average of 3.8 percent for 200 feet east of NH 16; from that point easterly, the grade increases to a maximum of 13.8 percent for 200 feet and then decreases to the crest of the hill which is approximately 850 feet from NH Route 16. The total rise in elevation is 72 feet."

He further noted that "[t]he grade of Ledgewood Road requires that timely plowing and sanding occur during winter storms to ensure that the hill is passable by all vehicles." Perhaps more importantly, however, Mr. Rhodes advised that "[t]he potential safety problems inherent with a steep grade during inclement weather are substantially reduced on Ledgewood Road by the 200 foot long platform at the bottom of the hill and by the very few turns which must be made by vehicles traveling down the hill." It is clearly pointless for the defendant to argue that Mr. Rhodes did not take the condition and configuration of Ledgewood Road into account when he evaluated the sufficiency and safety of the proposed access.

Defendant's argument that Professor Ossenbruggen's study was similarly flawed also must fail. As mentioned earlier, he, too, personally viewed the roadway in question. Furthermore, at the May 1, 1986 meeting of the board, Professor Ossenbruggen explained his conclusions regarding the potential effect of Ledgewood Road's grade on safety, and this obviously shows that he considered that factor. He explained that:

> "Based on this analysis it appears that there is more risk going down hill, which there is, because it takes longer for you to stop, but based on—what I was trying to say was that driver alertness as well as other factors, the design of the automobile and tires used and all that sort of thing, also play a role. And looking at existing data it appears, and I cannot prove this 100 percent, but it appears, from what I've seen, that people, when they go down steep inclines like this are more alert because I couldn't find any accidents to back up the hypothesis that it is more dangerous. So there are many other factors that come into play and it's not just the steepness of the road."

Although, in his eleven-page report, Professor Ossenbruggen did not specifically address the issue of the road becoming impassable at a time when emergency vehicles might be called to respond to the condominiums, he was unequivocal in his oral response to the board at the May 1 meeting. As to the potential for road impassability, Professor Ossenbruggen stated:

> "Well, I can give you my opinion. As you pointed out a few minutes ago, if something did occur that the area was blocked and you couldn't get up there, I mean the chances of that occurring are remote. There are risks in life, there's no question about it. You can't eliminate them all. *I think the risk associated with that possibility is very, very small.*

It certainly could happen, but I don't know what you could do about it."

(Emphasis added.)

 It could not be more clear that these experts, after thoroughly studying and evaluating the sufficiency of Ledgewood Road, came to the conclusion that the single access could adequately and safely withstand the increased traffic resulting from the construction of "Northbrook Resort." It is equally clear that they found the possibility of the road becoming impassable at a time when emergency vehicles are needed at the condominiums to be extremely remote. The board simply chose blatantly to ignore this expert advice, even though it was completely uncontradicted. Of course, the board is "entitled to rely in part on its own judgment and experience in acting upon applications for subdivision approval." *Durant*, 121 N.H. at 357, 430 A.2d at 144; *see also Biggs v. Town of Sandwich*, 124 N.H. 421, 427, 470 A.2d 928, 932 (1984). But although it "can rely on its personal knowledge of certain factors in reaching its decision, *Vannah v. Bedford*, 111 N.H. 105, 108, 276 A.2d 253, 255 (1971), its decision must be based on 'more than [the] mere personal opinion . . . of its members,'" *Barrington East Owners' Assoc. v. Town of Barrington*, 121 N.H. 627, 631, 433 A.2d 1266, 1268 (1981); and in this case, the record is devoid of facts supporting the board's decision. Its plainly unsubstantiated, conclusory opinion regarding the safety of Ledgewood Road is wholly insufficient to justify the board's complete disregard of the uncontradicted testimony of the experts. The fact that the board was disappointed by the conclusion reached by the experts does not excuse ignoring it.

Finally, we note that the defendant urges us to adopt a broader standard of review in this case. It is the defendant's position that because the trial court did not hear any new testimony and, therefore, did not judge credibility or witness demeanor, we should apply the same standard of review to the trial court's decision as was applied by the trial court to that of the board. Apparently, the defendant would have us abandon the well-settled standard of appellate review delineated above and reverse the trial court's decision if we would have reached a different conclusion than that of the court below. Even assuming that the defendant's position has some merit, it has no relevance here. We conclude not only that the trial court could reasonably have found from the evidence before it that the decision of the board was unreasonable, but that the trial court could not have found otherwise. The record in this case

compels the decision to reverse the board's denial of subdivision approval. Therefore, the decision of the trial court to reverse that of the board is affirmed.

*Affirmed.*

BROCK, C.J., did not sit; the others concurred.