Hillsborough-southern judicial district
No. 2008-370

CONTINENTAL PAVING, INC. & a.

v.

TOWN OF LITCHFIELD

Argued: February 18, 2009
Opinion Issued: April 9, 2009

*Hage & Hodes, P.A.*, of Manchester (*David E. LeFevre* on the brief and orally), for the appellant.

*Gottesman & Hollis P.A.*, of Nashua (*Morgan A. Hollis* on the brief and orally), for the appellees.

HICKS, J. The appellant, Town of Litchfield (Town), appeals an order of the Superior Court (*Groff*, J.), adopting an order of the Judicial Referee (*Perkins*, J.), vacating a decision of the Town's zoning board of adjustment (ZBA) that had denied a special exception to the appellees, Continental Paving, Inc. (Continental) and New England Power Company (NEPC). We affirm.

The trial court found, or the record supports, the following facts. Continental sought a special exception to build a gravel road over land owned by NEPC in order to access a parcel in Londonderry owned by the Londonderry Fish and Game Club. The road would be located in the Wetlands Conservation District (WCD) as delineated in section 1204.00 of the Town of Litchfield Zoning Ordinance (LZO). The proposed road would cross a wetland and would come within sixty-seven feet of a vernal pool.

After a hearing, the ZBA denied the special exception. The ZBA's minutes indicate concern by some board members about the road's proximity to the vernal pool. The ZBA held a rehearing and received a number of additional exhibits including a "Conservation Fact Sheet" promulgated by the New Hampshire Audubon Society. The ZBA again denied the special exception, referencing, among other things, a recom-

mendation by the New Hampshire Audubon Society that a 100-foot buffer of natural vegetation be maintained around vernal pools. The ZBA denied a second rehearing and the appellees appealed to the superior court. *See* RSA 677:4 (2008).

The trial court vacated the ZBA's decision and granted the request for special exception. Upon reconsideration, the court vacated its grant of a special exception but remanded the matter to the ZBA with instructions to grant the special exception.

On appeal, the Town argues that the trial court erred: (1) in concluding that a determination of the relevant criteria for a special exception required specialized scientific knowledge; (2) in concluding that the ZBA was bound to accept the conclusions of Continental's experts when the record supports a finding that those experts lacked credibility; (3) in concluding that the ZBA could not use information about vernal pools in general to educate itself, evaluate the experts' opinions and come to its own conclusions; and (4) by acting as a " 'super zoning board' and substitut[ing] its own judgment for that of the ZBA." The Town also argues that the ZBA's denial of the special exception was lawful and reasonable.

Our standard of review is well-settled:

> We will uphold the trial court's decision unless the evidence does not support it or it is legally erroneous. For its part, the trial court must treat all factual findings of the ZBA as *prima facie* lawful and reasonable. RSA 677:6 [(2008)]. It may set aside a ZBA decision if it finds by the balance of probabilities, based on the evidence before it, that the ZBA's decision was unreasonable.

*Chester Rod & Gun Club v. Town of Chester*, 152 N.H. 577, 580 (2005) (quotation, citation and brackets omitted).

We first review the relevant provisions of the LZO and the ZBA's findings. Under section 1208.00(a), roads are permitted in the WCD by special exception. LITCHFIELD, N.H., ZONING ORDINANCE § 1208.00(a). Applications for a special exception must be referred for review and comment to the planning board, the conservation commission and the health officer, and the proposed uses must meet the criteria listed in section 1208.01,[1] *see id.* § 1208.00, which provides, *inter alia:*

---

[1] Although section 1208.00 actually provides that the proposed uses must "meet the criteria listed in Section 1200.01," the numerical reference appears to be a misprint. Section 1200.01 states the purpose and intent of the ordinance. Section 1208.01 is entitled "Criteria for Granting a Special Exception" and one of the criteria is itself that "[i]t can be shown that the proposed use is not in conflict with any and all of the purposes and intentions listed in Section 1200.01 of this Ordinance."

*Criteria for Granting a Special Exception.* Special exceptions for uses within the Wetlands Conservation District may be granted provided that the following conditions are met. The burden of proof shall be upon the applicant who shall furnish such engineering and hydrological data as is reasonably necessary. Economic advantage alone is not reason for granting a special exception.

. . . .

b. It can be shown that the proposed use is not in conflict with any and all of the purposes and intentions listed in Section 1200.01 of this Ordinance.

*Id.* § 1208.01. Section 1200.01, in turn, provides in relevant part:

*Purpose and Intent.* The purpose of this ordinance is to protect the public health, safety and general welfare by controlling and guiding the use of land areas which have been found to be subjected to high water tables for extended periods of time. It is intended that this ordinance shall:

. . .

c. Protect unique, ecologically sensitive and unusual natural areas.

d. Protect wildlife habitats, wildlife corridors and maintain ecological balances.

e. Protect potential water supplies and existing aquifers (water-bearing stratum) and aquifer recharge areas.

*Id.* § 1200.01.

Finally, section 1207.03 of the LZO requires buffers in the WCD of "at least a fifty (50) foot wide area of undisturbed naturally vegetated upland habitat along the delineated edge of wetlands, streams and ponds, except in the case of basin marshes, fens, bogs and vernal pools that shall require at least two hundred (200) foot width." *Id.* § 1207.03.

At the first hearing on the respondent's application, a board member stated that she "ha[d] an issue" with the asserted lack of conflict with purposes c and d of section 1200.01. The notice of decision cited lack of compliance with only section 1200.01 c, stating:

The board sees a problem on this one since the proposal is to build a private drive which has direct impact on the 200 ft Vernal Pool setback requirement described as required by the LZO. The ZBA does NOT agree that the applicant has satisfied this specific criterion. The concern here is that the proposed roadway would only be 60 feet from the vernal pool which is already negatively impacted by development on other sides.

On rehearing, a ZBA member expressed concern over subsections 1200.01 c, d and e, stating, as recorded in the minutes, that "[s]he believes a vernal pool is unique in and of itself. A road within 60 feet of the pool is not protecting it." The notice of decision denying the special exception on rehearing made the following findings:

> 1200.01 c&d&e — Vernal pool is unique in and of itself. The Purpose of the ordinance is to conserve the pool. Having a road within 60 ft of the pool is NOT protecting the vernal pool or the travel pathways leading to it. The NH Audubon Society (from the Conservation Fact Sheet — part of Exhibit I) states that having a buffer of 100 ft of natural vegetation around the pool for as great a distance as possible back from the edge of the pool's high water mark will help to maintain water quality but will do little to protect amphibians living around the pool. Vernal pool breeders require 300 yards of natural habitat around the pool to survive.

> 1200.01 c&d&e See Exhibit H, page 7 subsection B ref Spotted Salamanders — the entire section describes the unique and ecologically sensitive nature of vernal pools.

> This section speaks of salamanders moving an average of 409 ft from the edge of the vernal pools in the course of several weeks to months following [breeding]. The road 60 feet from the pool will obstruct this.

> Wildlife habitat (Blanding's turtle, dragon fly, salamanders) are endangered and reside in this area.

The Town first challenges the trial court's finding that the determination before the ZBA required specialized or scientific knowledge. Specifically, the trial court stated that subsections c, d and e "all require specialized scientific knowledge to make a determination as to whether those requirements have been satisfied." It also stated that "[t]he reasons used by the majority [of the ZBA] to deny the application all require findings based on specialized or scientific knowledge. At no time does any member of the [ZBA] identify him or herself as having any specialized or scientific knowledge concerning this matter."

The Town argues that the trial court erred in finding that the determination before the ZBA required specialized or scientific knowledge because such a finding would divest the ZBA of its authority to determine whether a special exception would conflict with the general purpose and intent of a zoning ordinance. *See* RSA 674:33, IV (2008). Specifically, the Town

contends that the trial court's analysis would compel the ZBA to deny a special exception whenever an applicant fails to retain an expert with specialized scientific knowledge and, conversely, to grant a special exception when the only expert is one retained by the applicant.

The appellees counter that the Town "incorrectly characterizes" the trial court's order and instead contend that the court, consistent with the statutory standard, simply "reviewed whether, based upon the evidence presented, the ZBA's decision was unreasonable." Because we agree with the appellees that the trial court's ruling is sustainable under the statutory standard of review, we need not address the merits, in the abstract, of the court's purportedly broad characterization of the evidence required by subsections 1200.01 c, d and e as "specialized scientific knowledge."

The trial court assessed the evidence that was before the ZBA in this case and determined that the ZBA's denial of a special exception was unreasonable. Specifically, the court noted that Continental "presented evidence from two scientific experts . . . [explaining how, in their opinions, its] proposal did satisfy Sections c, d and e." On the other hand, the only evidence opposing the application, "other than two abutter complaints, is the 1998 Audubon fact sheet that deals with vernal pools in general." The court noted that the Audubon publication was "not addressed to this application and it doesn't speak to the applicants' evidence that the proposal complies with and satisfies Sections c,[ ]d and e of LZO 1200.01." The court therefore concluded that "[t]here is no legitimate support in the record for the denial" of a special exception.

This case presents a situation similar to that in *Condos East Corp. v. Town of Conway*, 132 N.H. 431, 438 (1989), where a town planning board "simply chose blatantly to ignore . . . expert advice, even though it was completely uncontradicted." There, we acknowledged that "the board is entitled to rely in part on its own judgment and experience in acting upon applications for subdivision approval." *Id.* (quotation omitted). We also noted, however, that "although [the planning board] can rely on its personal knowledge of certain factors in reaching its decision, its decision must be based on more than the mere personal opinion of its members." *Id.* (quotations, citation, brackets and ellipsis omitted). We concluded that "in this case, the record is devoid of facts supporting the board's decision. Its plainly unsubstantiated, conclusory opinion regarding the safety of [an access road] is wholly insufficient to justify the board's complete disregard of the uncontradicted testimony of the experts." *Id.* Similarly, in the instant case, the trial court found the lay opinions of certain ZBA members, based upon general information not specifically addressed to the subject site, to be insufficient to counter the uncontroverted expert opinions presented by Continental.

The Town argues, however, that the ZBA's denial of the special exception implies that it did not accept Continental's experts' conclusions and that "the record contains sufficient evidence to support a finding that [those] experts lacked credibility." The Town correctly notes that the ZBA does "not have to accept the conclusions of the experts." *Vannah v. Bedford*, 111 N.H. 105, 112 (1971), *overruled on other grounds by Cook v. Town of Sanbornton*, 118 N.H. 668 (1978).

The Town posits a number of grounds upon which the "ZBA *could have* reasonably questioned" the findings and credibility of Continental's experts, such as the time of year the experts performed their evaluations, and the circumstances under which they performed their assessments or prepared their reports. (Emphasis added.) These asserted grounds, however, are purely speculative, as the record contains no evidence that the ZBA actually did question the credibility or methodology of Continental's experts, and are not substantiated by evidence before the ZBA. For instance, the Town challenges the opinion of one expert on grounds that "he did not delineate the wetlands until November, after they had dried up, and he did not assess the vernal pool as breeding habitat until after the breeding season." There is no evidence in the record, however, to support the implied premise for the argument; namely, that such delineations and assessments must be made at certain times in order to be scientifically accurate or credible. Similarly, the Town challenged the opinion of one expert "on the basis that he did not prepare his written report until after the ZBA denied the special exception," and that of the other on the basis that "he did not perform an independent evaluation, . . . he never assessed the vernal pool, and by his own admission, he did not perform a thorough inspection." There was no evidence in the record, however, that either opinion was biased, inaccurate or lacking in scientific basis. We conclude that the trial court properly rejected the Town's credibility argument as unsupported by the evidence.

The Town next argues that the trial court erred in finding it unreasonable for the ZBA to give weight to general information about vernal pools. The Town asserts that "[t]he individual members of the ZBA may properly educate themselves, based on information contained within the record, and rely on their personal knowledge to evaluate the opinions of Continental's experts."

"We have previously held that in arriving at a decision, the members of the ZBA can consider their own knowledge concerning such factors as traffic conditions, surrounding uses, etc., resulting from their familiarity with the area involved." *Nestor v. Town of Meredith*, 138 N.H. 632, 636 (1994) (quotation and brackets omitted). Thus, ZBA members may base

their conclusion upon "their own knowledge, experience and observations," in addition to expert testimony. *Biggs v. Town of Sandwich*, 124 N.H. 421, 427 (1984). We reject, however, the Town's contention that information contained in exhibits before the ZBA is transformed into "personal knowledge" through individual ZBA members using such information to "educate themselves." Rather, the exhibits themselves were simply evidence before the ZBA. Thus, we turn to the Town's contention that the trial court erroneously "found that [it] was unreasonable for the ZBA to give weight to evidence that 'deals with vernal pools in general' and was 'not addressed to this application' or 'doesn't speak to the applicant's evidence.' " (Quoting trial court's order.)

Continental presented the opinions of two experts, Robert Procop, a New Hampshire certified wetland scientist with Wetland Consulting Services, and Scott D. Smyers, a field biologist with OxBow Associates, Inc. Procop testified that the proposed road would have no impact on any sensitive areas and little effect on wildlife. He further opined:

> While some upland and wetland areas will be impacted by the proposed driveway, neither of these areas are considered habitat for the species that utilize the vernal pool. The pool itself will not be impacted by the project, and a sufficient corridor will remain to allow amphibian movement between the pool and the remaining upland habitat.

Procop tailored his analysis to the site at issue and explained his reasoning. For instance, he stated that "[t]he current project will not impact the pool itself since all work will occur at least 60 ft upslope of the pool. The amount of traffic that would utilize the new driveway is so small that virtually no potential exists for contaminants to enter the pool." In addition, noting that the relevant amphibians "typically move at night," Procop opined that "[c]hances of significant [vehicular] traffic, particularly at night when it rains, are minimal. Contaminants entering the pool are also minimal because it is a gravel road. Virtually, there will be no impact to this vernal pool."

Similarly, Smyers opined that "it is unlikely that the installation of a gravel driveway across the shallowest portion of the wetland will have any measurable adverse impact to the amphibian habitat provided by [the] entire wetland system." He reasoned:

> The intended use of the driveway is to access a sportsman's club, thus is unlikely to generate any significant traffic at any time, especially during rainy nights, which is when many vernal pool amphibians are most likely to travel over land and are at most risk to mortality from vehicle traffic.

On the other hand, the information upon which the ZBA based its findings of fact, namely, the Audubon Society conservation fact sheet and rules promulgated by the Maine Department of Environmental Protection, contained only general information. For instance, the conservation fact sheet suggests as a conservation measure:

> Leave a buffer of natural vegetation around the pool for as great a distance as possible back from the edge of the pool's high-water mark. A buffer of at least 100 feet will help maintain water quality, but will do little to protect amphibians living around the pool. Vernal pool breeders require at least 300 yards of natural habitat around their pools in order to survive.

We find no error in the trial court's conclusion that this evidence was "not addressed to this application" and did not "speak to the applicants' evidence that the proposal complies with and satisfies Sections c,[ ]d and e of LZO 1200.01." The same factors discussed generally in the conservation fact sheet and used by the ZBA to deny the special exception, namely, water quality and the safety of amphibians that use vernal pools to breed, were specifically addressed by Continental's experts and determined by them to not be negatively affected by the proposed road. Based upon the evidence, the trial court could reasonably have found, by the balance of probabilities, that the ZBA's decision was unreasonable. *See Chester Rod and Gun Club*, 152 N.H. at 580.

The Town also contends that by "decid[ing] factual matters in the first instance," *id.* at 584, the trial court impermissibly substituted its own judgment for that of the ZBA. *See Thomas v. Town of Hooksett*, 153 N.H. 717, 724 (2006) (holding that "[t]he court may not substitute its judgment for that of the [ZBA]"); *Chester Rod and Gun Club*, 152 N.H. at 583 (noting that "[w]hen reviewing a decision of a zoning board of adjustment, the superior court acts as an appellate body, not as a fact finder"). The Town cites a number of instances in which it alleges the trial court "substituted its judgment for that of the ZBA" by considering evidence that the ZBA apparently failed to find compelling. We do not construe these instances as impermissible fact finding or substitution of judgment, but rather as a proper balancing of the probabilities based upon the evidence before the ZBA. *See Chester Rod and Gun Club*, 152 N.H. at 580.

Finally, the Town argues:

> Given that the express purpose and intent of the WCD is to "protect" sensitive wetlands such as the vernal pool in this case, which has already been negatively impacted [by prior development in the area], the ZBA could have reasonably concluded that

a road within 60 feet of the vernal pool would be contrary to the purpose and intent [of] the WCD, and lawfully and reasonably denied the special exception.

Having previously determined that the trial court correctly applied the statutory standard of review, on the evidence before the ZBA, we necessarily reject this contention.

*Affirmed.*

BRODERICK, C.J., and DALIANIS and DUGGAN, JJ., concurred.