**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2019-0278, <u>Three Ponds Resort, LLC v. Town of Milton</u>, the court on June 3, 2020, issued the following order:**

Having considered the briefs and oral arguments of the parties and the record submitted on appeal, the court concludes that a formal written opinion is unnecessary in this case. We affirm.

The plaintiff, Three Ponds Resort, LLC (Three Ponds), appeals an order of the Superior Court (<u>Houran</u>, J.) upholding a decision of the zoning board of adjustment of the defendant, the Town of Milton, denying Three Ponds' application for a special exception. Three Ponds contends that the trial court erred when it ruled that the ZBA: (1) could have reasonably concluded on the evidence before it that granting the special exception would cause "undue nuisance or serious hazard to pedestrian or vehicular traffic"; and (2) correctly interpreted and applied the regional impact statutes, <u>see</u> RSA 36:54-:58 (2019).

The following facts are derived from the record. Three Ponds owns a campground in Milton. The campground is located adjacent to Northeast Pond and has 223 campsites, 220 of which are suitable for use by recreational vehicles (RVs), and amenities including four bath houses, a playground, sports fields, beaches, seasonal docks, and a boat launch. Its single access is from Townhouse Road, which the ZBA found to be no more than 20 feet wide.

In 2017, Three Ponds proposed adding 173 new campsites and approximately three acres of amenities. Under the terms of the Milton zoning ordinance, this expansion is allowed only by special exception, which requires the ZBA to find that: (1) "the specific site is an appropriate location for the proposed use or structure"; (2) "the use will not be injurious, noxious, offensive or detrimental to the neighborhood"; (3) "there will be no undue nuisance or serious hazard to pedestrian or vehicular traffic"; (4) "adequate and appropriate facilities and utilities will be provided to insure the proper operation of the proposed use and structure so that the use will not be contrary to the public health, safety or welfare"; and (5) "the proposed use or structure is consistent with the spirit of this ordinance and the intent of the Master Plan."

Following a public hearing, the ZBA denied Three Ponds' application, concluding that it did not meet the third special exception criterion in regard to pedestrian and vehicular traffic. The ZBA granted Three Ponds' request for a

limited rehearing solely regarding the third criterion. Subsequently, Three Ponds amended its application to seek 163, instead of 173, new campsites.

Three Ponds hired a consultant to prepare a traffic study. The traffic consultant presented its findings to the ZBA at the rehearing and concluded that adding 173 new sites would result in "no material or undue operational or safety impact" on Townhouse Road. At the rehearing, ZBA members expressed concerns regarding the traffic study and voted to obtain an independent technical review. The technical review concluded that: (1) "[t]he traffic study used typical methodology for these types of studies"; (2) "[a] review of crash history . . . indicates that there is not a significant safety issue on Townhouse Pond [sic] Road"; and (3) based solely upon the road's crash history "there is no reason to expect that additional campground traffic would have an undue or inordinate safety impact." Although Three Ponds subsequently reduced the number of new sites it sought to 95, 75 of which would be suitable for use by RVs, the record does not reflect that it submitted any information regarding the traffic impact of that reduction.

When the ZBA resumed the rehearing, it announced that it had concluded that the proposed expansion was a development of potential regional impact, pursuant to RSA 36:54. It further concluded that it was required to re-notice the public hearing on the special exception, to include potentially impacted municipalities in Maine, and to consider anew all five special exception criteria.

Subsequently, the ZBA held several hearings, at which it received additional evidence. Ultimately, it denied the special exception by a unanimous vote, finding that the application did not meet special exception criteria two, three, and five. Regarding criterion three, in its notice of decision denying Three Ponds' application, the ZBA found

> there would be undue nuisance or serious hazard to pedestrian or vehicular traffic including the location and design of access ways and off-street parking because of Townhouse [Road] being a maximum of 20ft in width, that [the campground] has one access road, lack of safe ways for passage of pedestrians and bicyclists on Townhouse [Road], studies['] disregard [of] the road between the intersections studied, that the study was done at the end of August and that the road cannot be brought up to a safer standard.

Three Ponds moved for another rehearing, which the ZBA denied, and then appealed the ZBA's decision to the superior court. See RSA 677:4 (2016).

Following a hearing, the superior court upheld the ZBA's decision, finding that: (1) "the ZBA could have reasonably concluded on the evidence before it that there would be an undue nuisance or serious hazard to vehicular

2

and pedestrian traffic"; and (2) its "application of the regional impact statute was neither unlawful nor unreasonable." Because the trial court upheld the ZBA's finding that Three Ponds did not satisfy criterion three for a special exception, it declined to address the ZBA's findings on criteria two and five.

We first address whether the trial court erred by upholding the ZBA's decision that Three Ponds' proposed expansion did not meet the town's third criterion for a special exception. The trial court's review of the ZBA's decision is limited. Rochester City Council v. Rochester Zoning Bd. of Adjustment, 171 N.H. 271, 275 (2018). The trial court will not set aside the ZBA's decision, absent errors of law, unless the court is persuaded by the balance of probabilities, on the evidence before it, that the ZBA's decision was unreasonable. See RSA 677:6 (2016). The trial court must deem the ZBA's factual findings prima facie lawful and reasonable. Id. The trial court's review is not to determine whether it agrees with the ZBA's findings, but to determine whether there is evidence upon which they could have been reasonably based. Rochester City Council, 171 N.H. at 275.

Our review of the trial court's decision is similarly deferential; we will uphold its decision on appeal unless it is unsupported by the evidence or legally erroneous. Id. Our inquiry is not whether we would find as the trial court found, but rather whether the evidence before the court reasonably supports its findings. Vigeant v. Town of Hudson, 151 N.H. 747, 750 (2005). The trial court's findings are within its sound discretion. Id. As the appealing party, Three Ponds has the burden of demonstrating that the trial court committed reversible error. See Gallo v. Traina, 166 N.H. 737, 740 (2014).

On appeal, Three Ponds argues that the trial court erred because the traffic study commissioned by Three Ponds was "uncontradicted" and "the ZBA chose instead to rely upon its own personal, unsubstantiated, conclusory opinions." It contends that, as a result, the ZBA's findings were not entitled to deference by the trial court. We disagree.

The ZBA was entitled to question and reject the methodology or conclusions of the expert's traffic assessment. See Trustees of Dartmouth Coll. v. Town of Hanover, 171 N.H. 497, 507 (2018) (stating that planning board has this authority). Although the ZBA may not disregard an expert opinion based upon the vague and unsupported concerns of town residents, it may rely upon residents' statements of objective facts. See id. Similarly, although the ZBA may not reject expert opinion based upon its members' subjective personal feelings or vague unsupported conclusions, id. at 513, "the members of the board can consider their own knowledge concerning such factors as traffic conditions, surrounding uses, etc., resulting from their familiarity with the area involved." Vannah v. Bedford, 111 N.H. 105, 108 (1971), overruled on other grounds by Cook v. Town of Sanbornton, 118 N.H. 668, 671 (1978).

3

To support its contention that the ZBA erred by not accepting the conclusions of the traffic study, Three Ponds relies upon Condos East Corp. v. Town of Conway, 132 N.H. 431 (1989), and Continental Paving v. Town of Litchfield, 158 N.H. 570 (2009). Those cases, however, are readily distinguishable from this case.

In Condos East, the planning board "chose blatantly to ignore . . . expert advice, even though it was completely uncontradicted." Condos East, 132 N.H. at 438. The planning board attempted "to justify its complete disregard for the opinions of these experts by stating that the experts did not address the steepness and dead-end aspects" of the road at issue. Id. at 436. The evidence, however, did not support this conclusion because the experts, having viewed the site, "could not help but take into account the physical attributes of the proposed access." Id.

In Continental Paving, there was "no evidence that the ZBA actually did question the credibility or methodology of [the applicant's] experts." Continental Paving, 158 N.H. at 575. "[T]he only evidence opposing the application, other than two abutter complaints, [was] the 1998 Audubon fact sheet that deal[t] with vernal pools in general." Id. at 574 (quotation omitted). "The same factors discussed generally in the conservation fact sheet and used by the ZBA to deny the special exception . . . were specifically addressed by [the applicant's] experts and determined by them to not be negatively affected by the proposed road." Id. at 577.

In direct contrast to the facts in Condos East and Continental Paving, in this case the ZBA considered Three Ponds' traffic study in detail and identified at least three significant concerns, all of which are amply supported by the certified record.

First, the traffic study did not consider pedestrian traffic on Townhouse Road. Its data collection was limited to two intersections: (1) where the campground's sole driveway met Townhouse Road; and (2) where Townhouse Road met a state route. It did not collect data from the portion of Townhouse Road between those two sites. The ZBA received public testimony from numerous people that children and adults walk along Townhouse Road to a beach and bicycle and jog on the road, that Townhouse Road was narrowed by beachgoers parking on the side of the road, and that Townhouse Road had no shoulders or sidewalk to shelter people on the road from wide vehicles, like delivery trucks and RVs.

One ZBA member recounted his own experience, stating that he avoided riding his bicycle on Townhouse Road when the campground was open. See Vannah, 111 N.H. at 108 (stating that ZBA members can consider their own knowledge concerning such factors as traffic conditions and surrounding uses resulting from their familiarity with area involved). Another ZBA member,

4

relying upon his knowledge of the road, stated that the existing traffic already made the lack of sidewalks an issue. These were not personal opinions, but rather descriptions of the members' actual experience. Compare id. (stating that ZBA members may consider their own knowledge) with Trustees of Dartmouth, 171 N.H. at 513 (stating that planning board members may not rely upon their personal feelings unsupported by evidence).

Second, the traffic study stated that "Townhouse Road is a conforming local roadway that provides ample width ranging from 20-feet to 22-feet to accommodate existing and modest increases in traffic activity following campground expansion." The traffic study further stated, apparently extrapolating from the data collected at the intersections, that Townhouse Road currently carries approximately 3,000 vehicles per day during the summer. This figure included a 25 percent upward adjustment, based upon historical traffic counts, to account for the anticipated increase in traffic after the reopening of the bridge on Townhouse Road into Maine. The ZBA was presented with the New Hampshire Department of Transportation Minimum Geometric & Structural Guides for Local Roads and Streets (Guidelines) that contradicted the traffic study's statement that Townhouse Road had "ample width." The Guidelines provide that a road carrying an average of 1,500 or more vehicles per day should be a minimum of 24-feet wide, with 8- to 10-foot shoulders.

Furthermore, the traffic study did not consider that most of the increase in traffic from the campground's proposed expansion would consist of RVs. Three Ponds' traffic engineer testified that the Department of Transportation reported that four percent of the overall trips on Townhouse Road were made by "larger vehicles[ ](recreation vehicles, tow behinds, trailers)." Three Ponds' final amendment to its special exception application sought 95 new campsites, of which approximately 80 percent would be for RVs. The campground had 216 existing RV sites, making this an increase of approximately 35 percent in the potential number of RVs. Two members of the public also expressed concern about the increase in delivery vehicles required to service the proposed amenities.

On this evidence, the ZBA could have reasonably concluded the traffic study did not fully reflect the current conditions of Townhouse Road, that the road was not wide enough to accommodate existing traffic comfortably, and that increasing the number of wide vehicles using the narrow road — with no shoulders or sidewalk — would endanger people walking, cycling, or running on the road.

Third, numerous members of the public testified before the ZBA that, because of the timing of the traffic study, it did not accurately represent peak traffic on Townhouse Road. The traffic at the two intersections was measured on the Friday morning and evening, and mid-day the following Saturday of the

last weekend in August. A ZBA member commented that the study tallied no RVs entering the campground during these hours. Several members of the public testified that, although the campground was nearly full at the time of the study, the peak time for rentals of summer homes in the area is actually July, not August. One member of the public testified that most of his seasonal neighbors were gone by the week in which the study was conducted. From this evidence, the ZBA could have reasonably concluded that the assessment of existing traffic in the study did not accurately represent peak traffic on Townhouse Road. Cf. Continental Paving, 158 N.H. at 577 (stating that ZBA erred by relying on general evidence that did not address application or applicant's evidence).

Three Ponds, relying upon cases from other states, contends that "lay opinions of the members of the public who opposed [its] special exception application were entitled to no probative weight from the ZBA" because "[t]hese individuals were not traffic experts." In New Hampshire, however, all people "who can demonstrate that they are affected directly by the proposal under consideration" are entitled to submit testimony to the ZBA. RSA 676:7, I(a) (Supp. 2019). In this case, the testimony of numerous members of the public, set forth above, did not consist of mere lay opinions, but, rather, consisted largely of statements of objective facts. See Trustees of Dartmouth Coll., 171 N.H. at 507 (stating that planning board may not rely upon residents' vague and unsupported concerns, but may rely upon their statements of objective facts).

Finally, we note that, although the traffic study predicted that, based upon the data collected at the two intersections, the proposed expansion would result in 42 additional vehicle trips per hour at Saturday mid-day peak, the study also acknowledged that the use of "industry standard" projections would result in 67 additional trips per peak hour. This dichotomy is notable. From these disparate figures the ZBA could have reasonably concluded that the proposed expansion would have more than doubled the campground traffic at peak hours, from the current 54 vehicle trips at Saturday mid-day to 121 vehicle trips per peak hour. Moreover, given that the traffic study stated that Townhouse Road carried approximately 300 vehicles per hour during peak hours, the ZBA could have reasonably concluded that, at peak hours, the proposed expansion would add approximately one vehicle per minute to a narrow road already carrying approximately five vehicles per minute at peak hours.

In conclusion, in this case the trial court found that "[t]he members of the ZBA drew on their own experience, in addition to the testimony of local residents, to determine that the [traffic] survey simply did not account for all of the hazards along Townhouse Road." On this record, and applying our deferential standard of review, we conclude that Three Ponds has failed to carry its burden to establish that the trial court's decision to uphold the ZBA's denial

6

of the application for a special exception is unsupported by the evidence or legally erroneous.  See Rochester City Council, 171 N.H. at 275.  Because we affirm the trial court's decision as to special exception criterion three, we need not address Three Ponds' statutory arguments regarding the regional impact statutes.

Affirmed.

HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.