NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports.  Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____


Grafton
No. 2017-0595


TRUSTEES OF DARTMOUTH COLLEGE

v.

TOWN OF HANOVER

Argued:  June 27, 2018
Opinion Issued:  November 6, 2018


McLane Middleton, P.A., of Manchester (Bruce W. Felmly and Wilbur A. Glahn on the brief, and Mr. Felmly orally), and Orr & Reno, P.A., of Concord (William C. Chapman and Jeremy D. Eggleton on the brief), for the plaintiff.


Town of Hanover, filed no brief.


Cleveland, Waters and Bass, P.A., of Concord (David W. Rayment and Mark S. Derby on the brief, and Mr. Rayment orally), for the intervenors.


DONOVAN, J.  The plaintiff, the Trustees of Dartmouth College, appeals an order of the Superior Court (Bornstein, J.) upholding the denial of its application for site plan approval by the Town of Hanover's Planning Board for the construction of an Indoor Practice Facility (IPF).  The planning board

denied approval of the application upon finding that it failed to comply with three general considerations of Hanover's site plan regulations. The trial court upheld the planning board's decision following a hearing at which several Hanover residents owning properties abutting the proposed site intervened to defend the board's decision (abutters). We reverse and remand because the evidence does not reasonably support the trial court's findings. The certified record confirms that the board based its denial of Dartmouth's application upon subjective and personal feelings and the trial court unreasonably adopted a rationale not supported by the record to affirm the board's decision.

The following facts were found by the trial court or are otherwise evident from the certified record. In March 2016, Dartmouth submitted its site plan application seeking approval of the construction of a 69,860 square foot IPF within the college's 41-acre athletic complex located in Hanover's Institutional Zoning District (I-District). The athletic complex includes two, similarly-sized, indoor sports facilities — the Thompson Arena and the Boss Tennis Center — as well as several outdoor athletic fields, tennis courts, and a large parking lot. Dartmouth proposed building the IPF next to the Boss Tennis Center on an area known as the "sunken garden," at the northeast corner of the athletic complex. The proposed site abuts a neighborhood of single-family homes on Tyler Road and Chase Road located in Hanover's Single Residence zoning district (SR-District).

Hanover created the I-District as a "special district" to meet certain needs of the institution, here, the college — by permitting the development of facilities for educational and recreational purposes and large buildings that could accommodate warehouse and medical center uses. Town of Hanover Zoning Ordinance (HZO) § 405.6(A), (B). The town enacted stringent height limitations and setback requirements for buildings within the I-District that are in close proximity to residential zoning districts. Id. § 405.6(C)(2), (3). For example, no building within the I-District may be placed within 75 feet of a residential zoning district boundary, id. § 405.6(C)(2), buildings constructed within 150 feet of a residential zone may not be more than 35 feet in height, and buildings set back 150 feet or more from a residential zone may be, on average, a maximum of 60 feet in height. Id. § 405.6(C)(3); see also HZO § 505.1(B)(2) (describing the method of calculating height of buildings in the I-District).

Hanover's SR-District provides for one-family residences that are "typical [to] many New England villages" along with other types of uses by special exception, including agricultural and governmental uses that complement and serve single-family homes. Id. § 405.8(A), (B). Additional uses are permitted within the SR-District by special exception, such as governmental uses for public safety, education, and recreation. Id. § 405.8(B). The interplay and impacts, both real and potential, between the uses within the I-District and the abutting SR-District became a focal point of the opposition to the IPF and the board's consideration of Dartmouth's site plan application.

Between April and December 2016, the board held no fewer than 16 meetings, including two site visits, during its consideration of the IPF. The abutters who reside on Tyler and Chase Roads and own properties closely abutting the athletic complex vigorously opposed the IPF.[1] Dartmouth revised its site plan application several times to address their concerns, by, inter alia: (1) adding plantings of landscape screening in coordination with the requests and preferences of the abutting neighbors; (2) modifying the size of the IPF's windows and adding the installation of automatic shades and window glazing to reduce light spill from the proposed building; and (3) adjusting the IPF's roof line to lower the building's height profile.

Although the Hanover Zoning Administrator informed the board that the IPF would be fully compliant with the town's zoning ordinances, including ordinances regulating height restrictions, setback requirements and building-to-lot size ratio limitations, the abutters complained about the negative impacts the IPF would impose on their neighborhood, including a concern that the building's height would block an unreasonable amount of sunlight and cast shadows on their homes. In response, Dartmouth conducted a study of this potential impact and presented its findings to the board by way of an animated shadow study.[2] The abutters prepared their own interpretation of the college's shadow study that purported to calculate the duration of time that the IPF would cast shadows on their residences.

In anticipation of the board's final deliberations on the college's application, Hanover's planning board staff prepared a final memorandum recommending the approval of the application with 21 conditions. Dartmouth agreed to comply with all 21 conditions. In December 2016, the board

---

[1] In its filings, Dartmouth alleges that the vice-chair of the planning board improperly influenced the board's decision by actively participating in the opposition to the college's site plan. This board member recused herself from the board's deliberations on the application because her residence closely abuts the athletic complex. Dartmouth argues that, despite this member's recusal, she represented the abutters and voiced her strong opposition to the project in letters, e-mails and formal presentations to her fellow board members. The college complains that the recused board member's influence on the board was apparent, given that the board ultimately decided to deny the application based upon the three general considerations that she advanced throughout the site plan review process. The abutters counter that Dartmouth did not raise this issue with the trial court. We agree with the abutters. Dartmouth did not raise this issue with the trial court or identify it in the college's notice of appeal. Thus, we do not opine on the propriety of the recused board member's participation in the opposition to the college's application.

[2] The record reveals that the abutters' opposition maintained numerous objections that were not relied upon by either the board or the trial court and, thus, are not pertinent to this appeal, including complaints with: (1) the project's impact on the town's storm water management system; (2) the building's lack of architectural detail; (3) the negative impact the IPF posed to the abutters' property values; and (4) the potential noise and sound pollution created by the proposed building. In response to these complaints, Dartmouth retained professionals to study these potential impacts and either modified its site plan to address these concerns or presented sufficient evidence to rebut them.

deliberated on the final site plan application and discussed, among other things, the members' feelings about the project's scale and the aesthetic effect it would have on the adjacent neighborhood. Following deliberations, the board voted 4-1 to deny the application and issued a notice that enumerated three reasons for its decision. In doing so, the board found that the college's site plan application:

1) Does not conform with the Hanover Master Plan (As cited in Article IX A 2b of the Site Plan Review Regulations);

2) Negatively impacts the abutters, neighborhood and others, town services and fiscal health (As cited in Article IX A 2c Site Plan Review Regulations); and

3) Does not relate to the harmonious and aesthetically pleasing development of the town and its environs (As cited in Article IX A 2h Site Plan Review Regulations).

Dartmouth appealed the board's decision to the trial court, arguing that the three regulations relied upon by the board are vague, ambiguous, and not proper standards by which to review a site plan application under either RSA 674:44 (2016), or the New Hampshire and United States Constitutions. N.H. CONST. pt. I, art. 15; U.S. CONST. amend. XIV. The college also maintained that the board impermissibly based its decision on personal and subjective feelings, rather than objective and discernible standards. Hanover appeared but deferred to the intervening abutters with respect to Dartmouth's appeal. The abutters argued that the board's decision was legal and reasonable and maintained that the IPF: (1) is massive and out of character with the abutting residential neighborhood; (2) fails to provide for the harmonious, aesthetically pleasing, or attractive development of the town; and (3) is capable of blotting out the sun and shadowing homes in the abutting neighborhood for 7 months of the year.

The trial court held a one-hour hearing in August 2017 following substantial briefing and arguments submitted by the college and the abutters.[3] The record of the hearing establishes that the parties did not dispute that the application complied with the requirements of Hanover's zoning ordinances applicable to the I-District. Nonetheless, the trial court subsequently upheld the board's decision, ruling that the regulations the board relied upon are valid. The trial court also ruled that the board did not err by basing its decision, "to a considerable degree on its concerns about the project's impacts

---

[3] The Town of Hanover did not participate in the appeal other than to defer to the abutters and, assuming the college prevailed on appeal, agree to Dartmouth's request for the "builder's remedy" provided the college complied with the conditions to approval recommended by the town's planning board staff.

4

on the abutting homes, as opposed to the entire 'neighborhood' of the proposed facility." The trial court further ruled that the board members did not impermissibly rely upon their personal feelings, and concluded that the board's decision was lawful and reasonably based upon a particular concern that the IPF "would block an unreasonable amount of sunlight from reaching abutting homes."

On appeal, Dartmouth argues that: (1) the board and the trial court erred by relying upon general considerations of Hanover's site plan regulations to deny the application because the general considerations are vague and fail to establish clear standards necessary to assess the application under our "average person" standard, see Town of Freedom v. Gillespie, 120 N.H. 576, 580 (1980) (ordinance must be framed in terms sufficiently clear, definite, and certain, to enable an average man after reading it to understand when he is violating its provisions); and (2) the board improperly based its decision on personal feelings and engaged in ad hoc decision-making, while the trial court erroneously relied upon unsupported claims and adopted a rationale, not supported by the evidence or the board's deliberations, to affirm the board's decision. The abutters respond by maintaining that, in general and as applied to Dartmouth's application, the location of the proposed IPF provided the necessary "observable character," see Town of Deering v. Tibbetts, 105 N.H. 481, 485-86 (1964), such that the "ordinary person" could understand and comply with the general considerations. The abutters also argue that, pursuant to our deferential standard of review, the record supports the trial court's determination that Dartmouth failed to meet the general considerations.

We now turn to the applicable standard of review. The trial court's review of a planning board's decision is governed by RSA 677:15, V (2016), which provides that the trial court "may reverse or affirm, wholly or partly, or may modify the decision brought up for review when there is an error of law or when the court is persuaded by the balance of probabilities, on the evidence before it, that [the board's] decision is unreasonable." As such, the trial court's review is limited. Motorsports Holdings v. Town of Tamworth, 160 N.H. 95, 99 (2010). The trial court must treat the factual findings of the planning board as prima facie lawful and reasonable and cannot set aside its decision absent unreasonableness or an identified error of law. Id. The appealing party bears the burden of persuading the trial court that, by the balance of probabilities, the board's decision was unreasonable. Id. The trial court determines, not whether it agrees with a planning board's findings, but rather whether there is evidence upon which its findings could have been reasonably based. Id. Our review is similarly limited. We will reverse a trial court's decision on appeal only if it is not supported by the evidence or is legally erroneous. See id. We review the trial court's decision to determine whether "a reasonable person could have reached the same decision as the trial court based on the evidence before it." Star Vector Corp. v. Town of Windham, 146 N.H. 490, 493 (2001) (quotation omitted).

5

Bearing in mind the foregoing standards of review, we consider Dartmouth's second argument on appeal. Specifically, we will address the college's argument that the trial court's decision is unreasonable and legally erroneous because the court: (1) relied upon factual claims and a rationale, not supported by the evidence or the board's deliberations; and (2) upheld a planning board decision that was based upon ad hoc decision-making and personal feelings, rather than objective or discernible facts, to find that the application failed to meet the general considerations. Before assessing the merits of this argument, we briefly review the planning board's duties and obligations in conducting the site plan review process.

"Site plan review is designed to insure that uses permitted by a zoning ordinance are 'constructed on a site in such a way that they fit into the area in which they are being constructed without causing drainage, traffic, or lighting problems.'" Summa Humma Enters. v. Town of Tilton, 151 N.H. 75, 78 (2004) (quoting 15 P. Loughlin, New Hampshire Practice, Land Use Planning and Zoning § 30.01, at 425 (2000)). Site plan review is intended to ensure "that sites will be developed in a safe and attractive manner and in a way that will not involve danger or injury to the health, safety, or prosperity of abutting property owners or the general public." Id. (quotation omitted). "These purposes are accomplished by subjecting the plan to the very expertise expected of a planning board in cases where it would not be feasible to set forth in the ordinance a set of specific requirements upon which a building inspector could readily grant or refuse a permit." Id. (quotation omitted). Site plan review is, nonetheless, limited. Id. A planning board's review "'does not give the planning board the authority to deny a particular use simply because it does not feel that the proposed use is an appropriate use of the land. Whether the use is appropriate is a zoning question.'" Id. (quoting Loughlin, supra § 30.09, at 437).

Here, the trial court ruled that the board reasonably concluded that Dartmouth's application failed to meet the general considerations set forth in Article IX 2(c) and (h) of Hanover's site plan regulations. The trial court found that the board denied the application out of a concern that the IPF "would block an unreasonable amount of sunlight from reaching the abutting homes." As support for this finding, the trial court cited certain statements made by board members during their deliberations and relied upon the report prepared by the abutters in response to Dartmouth's shadow study. The trial court quoted this report and expressly relied upon its conclusion that "'residents of neighboring homes will lose a significant portion of the direct sunlight when days are shortest,' and in some cases, 'more than 10 [percent] of direct sunlight will be lost.'" Based on this evidence, the trial court found that "[b]oard members could reasonably have concluded that the proposed facility would block a significant amount of sunlight from reaching abutting homes [which] is objectively both a negative impact upon abutters and inconsistent with the

6

harmonious and aesthetically pleasing development of the environs of the proposed facility."

The record of the board's deliberations, however, does not support the trial court's findings or its conclusion. On the record before us, a reasonable person would not have found, as the court did, that the board rejected the site plan due to a concern that the IPF would negatively impact the neighborhood by blocking "a significant amount of sunlight from reaching abutting homes." Cf. Motorsport Holdings, 160 N.H. at 103-04 (discussing review of certified record to determine whether the board sufficiently apprised the applicant of its reasoning in denying an application for a special use permit). Our review of the transcript of the board's deliberations reveals that two board members mentioned "general darkening," "blocked views," the "absence of light," and "shading" as potential concerns with the IPF. But, the record also reflects that these board members did not base their decision on any one of these factors. Rather, board member Carter acknowledged that "our own site plan regulations are not sufficiently developed on these topics . . . to deny the IPF [on that basis]." Board member Sims reasoned that:

> What we also have to recognize is that there is some shading probably already caused by the existing trees, which are already quite tall and will continue to grow, I hope, in some respects for many years to come. So the question is, how much more shading on top of the existing shading, will the building create, and is it excessive? And I don't know how we can measure that.

The remaining two board members who voted to deny the application did not reference shadows, shading, or any other objective criteria. Instead, board member Mayor concluded that the "building itself, in its location as proposed, looms as an affront to the adjacent neighborhood,"[4] and board member Criswell reasoned that "the crux of the matter has been the scale and proximity of the building to the neighborhood and how those things, in turn, affects [sic] the character."

The trial court misinterpreted the record because, contrary to its findings, the board did not deny Dartmouth's application because the IPF would deprive abutting homes of sunlight. Although the trial court acknowledged our prior rulings prohibiting planning board decisions based upon personal opinions or "vague concerns," see Ltd. Editions Props. v. Town of Hebron, 162 N.H. 488, 497 (2011), the court unreasonably relied upon facts that are not supported by the record of the board's deliberations to justify the board's decision. Because the record does not support the trial court's finding

---

[4] We recognize that board member Mayor also commented on his responsibility to protect the neighborhood from a loss of property values as a factor in his decision. We specifically address this issue later in this opinion.

7

that the board rejected the application out of a particular concern that the IPF would block an unreasonable amount of sunlight from reaching abutting homes, the trial court's decision is erroneous.

Moreover, even if the trial court could have reasonably found that the board's deliberations reflect a concern with the IPF's potential impact on blocked sunlight and shading, the record does not reasonably support this conclusion. In its order, the trial court relied upon the conclusions of the abutters' analysis of the college's shadow study that purported to calculate the hours in a day during which the IPF would cast shadows on five abutting homes between September 21 and March 21. Based upon these conclusions, the trial court gathered that "the facility would block up to over an hour of mostly afternoon sunlight from reaching certain homes during some months of the year."[5]

Absent from the trial court's analysis, however, is any recognition of the impact caused by the existing tree line within the border between the athletic complex and the abutting properties. Notably, the record includes evidence that the abutters' analysis of the college's shadow study acknowledged that "[t]he presence of foliage on the trees obscures the impact of the IPF shadows" and board member Sims identified shading caused by existing trees as a basis for not relying upon this potential impact as a rationale for denying the application. Dartmouth's animated shadow study surveyed trees on the college's property for height and foliage in an effort to accurately depict darkening or shadowing.[6] The college's study concluded that any shading that could be attributed to the IPF was heavily intertwined with the shadows cast by existing buildings and trees located within the athletic complex that bordered the abutters' residences. The trial court ignored the findings reached by Dartmouth's expert shadow study and unreasonably adopted the abutters' conclusions without considering whether their conclusions were reasonably based upon objective facts, rather than vague and unsupported concerns.

The abutters argue that the board was justified in not crediting Dartmouth's shadow study. This argument, however, misses the point because the board did not rely upon shadowing, darkening, or the abutters' shadow report to deny the application. While the board may have been free to question and reject the methodology or conclusions of the college's expert study, see Vannah v. Bedford, 111 N.H. 105, 112 (1971), overruled on other grounds by Cook v. Town of Sanbornton, 118 N.H. 668 (1978), the trial court could not

---

[5] To the extent the trial court relied on the abutters' report in making any findings with regard to shadows or darkening of the abutting neighborhood, these findings and conclusions are not reasonably supported by the abutters' study of potential shading on the five closest, abutting residences.

[6] We note that the college's study did not include animations of shadowing created by the existing trees located on the neighboring properties on Tyler Road. We thus find it reasonable to conclude that the conclusions of the college's shadow study are conservatively drawn.

8

have reasonably ignored the college's study and adopted the abutters' conclusory opinions when the record reflects that: (1) the board did not rely on the abutters' analysis to deny the application; and (2) the abutters' analysis was based upon vague and unsupported concerns and not objective facts.

Our previous rulings do not support the trial court's deference to the board's decision under these circumstances. In Continental Paving v. Town of Litchfield, 158 N.H. 570 (2009), for example, we upheld the trial court's reversal of the zoning board of adjustment's denial of a special exception where the applicant presented uncontroverted expert evidence in support of the exception and the opposing lay opinions and general information were insufficient to refute the experts' conclusions. Continental Paving, 158 N.H. at 573-74. Here, the record fails to support either of the trial court's conclusions that the board denied the application out of a concern that the IPF would deprive abutting homes of sunlight, or that there is sufficient support in the record to conclude that the IPF would negatively impact the abutting homes in this manner. Accordingly, we cannot conclude that a reasonable person could have reached the same decision as the trial court based on the evidence before it.

We next turn to Dartmouth's contention that the trial court erroneously found that the board did not rely on personal feelings and ad hoc decision-making in deciding that the application failed to meet Hanover's general considerations. As we have previously noted, the board's notice of action relied upon three general considerations of Hanover's site plan regulation when it denied the college's application. The trial court, however, only considered the board's determination that the site plan failed to meet two of these general considerations, Article IX 2(c) and (h) of Hanover's site plan regulations, because the abutters implicitly conceded the illegality of the board's denial of the application based upon its nonconformance with the Hanover Master Plan.[7] We will similarly limit our review to the two general considerations relied upon by the board and considered by the trial court.

The interpretation of a planning board's regulations presents a question of law for this court to decide and we are not bound by the interpretation of the planning board. Lemm Development Corp. v. Town of Bartlett, 133 N.H. 618, 620 (1990). Moreover, a planning board's decision "must be based upon more than the mere personal opinions of its members." Ltd. Editions Props, 162 N.H. at 497. Although the members of a planning board are entitled to rely, in

---

[7] In Rancourt v. Town of Barnstead, 129 N.H. 45, 48-49 (1986), we rejected a planning board's reliance on limited growth recommendations in a master plan when no such limited growth legislation had been implemented by an action of the local legislative body pursuant to State statutes. Here, counsel for the abutters informed the trial court that the board members who voted to deny approval of the application did not base their decision on a lack of conformity with the master plan, although the record suggests otherwise. Nonetheless, we need not address this aspect of the board's decision because this issue was not considered by the trial court.

part, on their own judgments and experiences, the board, as a whole, "may not deny approval on an ad hoc basis because of vague concerns." Id.

The board decided that Dartmouth's application failed to meet Article IX 2(c) because the IPF "[n]egatively impacts the abutters, neighborhood and others, town services and fiscal health." The board also found that the IPF failed to meet Article IX 2(h) of Hanover's site plan regulations, which requires the board to assess the "relationship of the project to the harmonious and aesthetically pleasing development of the town and its environs." The trial court ruled that the board could have reasonably found that the site plan application failed to meet Article IX 2(c) because the IPF "would block a significant amount of sunlight from reaching abutting homes." However, as we previously explained, this ruling is inconsistent with the reasoning articulated by the board during its final deliberations. Thus, the trial court erroneously interpreted the evidence and misconstrued the board's deliberations in upholding the board's decision that the application failed to satisfy this general consideration. The trial court similarly erred by sustaining the board's determination that the IPF failed to meet Article IX 2(h). The trial court found that the board could properly "consider and give appropriate weight to a proposal's effects on abutting properties," and with respect to Article IX 2(h), its relationship with the "'environs' of a project." Yet, both general considerations explicitly require an assessment of the project's impact and relationship to the development of the neighborhood, the town, and its environs, not just its impact on, and relationship with, abutting properties, or "the environs of the project."

When interpreting planning board regulations, which we do de novo, the general rules of statutory construction govern our review. See Doyle v. Town of Gilmanton, 155 N.H. 733, 735 (2007). Thus, the words and phrases of the regulations should be construed according to the common and approved usage of the language. Id. Webster's Third New International Dictionary defines "environs" as "the enclosing limits or boundaries" and "the suburbs or districts round about a city or other populated place." Webster's Third New International Dictionary 760 (unabridged ed. 2002). Applying the approved and common usage of the term "environs" to Article IX 2(h) requires an assessment of the proposal's relationship to the surrounding districts and not just to its relationship to the surroundings of the proposed site of the project. The trial court and the board applied this consideration too narrowly.

The environs to which this general consideration applies includes the I-District, as well as the SR-District, and a proper assessment of the project's relationship to the harmonious and aesthetically pleasing development, must, at the very least, include both districts. The SR-District is zoned for one-family residences "as is typical [to] many New England villages," with other types of uses allowed by special exception, including agricultural and governmental uses that complement and serve single-family homes. HZO § 405.8. The

I-District is zoned to meet the needs of the institution, or the college, and permits the development of facilities for educational, recreational purposes, including warehouses and other uses. Id. § 405.6(A), (B). Thus, the facts at issue here differ from the circumstances we addressed in Tibbetts, where Deering sought to protect its well-defined, historic and harmonious town common. See Tibbetts, 105 N.H. at 483-84. In contrast, the "observable character" of the neighborhood here includes two similarly-sized, indoor athletic facilities within a zoning district that obviously permits the development of buildings like the IPF. See HZO § 405.6(B). Any conclusion that the IPF lacks conformity or is not harmonious with the character and development of this neighborhood, or the town and its environs, is directly contradicted by the applicable zoning regulation and is unreasonable.

The abutters further contend that the trial court properly upheld the board's findings that the application failed to meet the general considerations, because: (1) the IPF represents a "dramatic and permanent change" to the open views enjoyed by the neighboring residences; and (2) is an "incongruous structure" that would constitute a "significant expansion" that "will certainly change the nature, feel and atmosphere of the neighborhood" without a "meaningful and harmonious transition" from the I-District to the Tyler Road neighborhood. They urge us to consider evidence allegedly supporting the trial court's decision, such as the college's refusal to consider alternative locations for the IPF, other than the sunken garden, and the project's adverse impact on the property values of the abutters' residences. Citing our decision in Quinlan v. City of Dover, 136 N.H. 226 (1992), the abutters remind us that when "a trial court reaches the correct result, but on mistaken grounds, [we] will sustain the decision if there are valid alternative grounds to support it." Quinlan, 136 N.H. at 230 (quotation omitted). Our review of the record, however, fails to identify a valid alternative ground that was considered by the board and which supports the trial court's decision.

Undoubtedly, the Tyler and Chase Road neighborhood has benefited from Dartmouth's undeveloped, open fields, such as the sunken garden, within its athletic complex. The record confirms that the abutters opposed any development of the sunken garden to preserve the buffer of open space between the college's athletic complex and their neighborhood. The record of the board's deliberations evidences the board's support for the abutters' position. Nonetheless, a planning board cannot use the site plan review process to require a landowner to dedicate its own property as open space for essentially public use without proper compensation. See Robbins Auto Parts, Inc. v. City of Laconia, 117 N.H. 235, 236-37 (1977) (ruling that planning board could not require applicant to grant to the city an easement over the applicant's property as a condition to site plan approval); Burrows v. City of Keene, 121 N.H. 590, 598 (1981) (arbitrary or unreasonable zoning restrictions that substantially deprive an owner of the economically viable use of his land constitutes a taking). Moreover, the added setback and height restrictions governing

11

I-District developments that abut residential areas already address the concern for a harmonious transition between zones.  See HZO § 405.6(C) (2), (3).  The record does not reasonably support a conclusion that Dartmouth should be prohibited from developing its property, in a manner consistent with the zoning requirements, and maintain open space to satisfy a general consideration for the harmonious and aesthetically pleasing development of the town and its environs.  Accordingly, the trial court erred in upholding the board's finding that the IPF failed to meet either Article IX 2(c) or 2(h).

To the extent that the abutters argue that the board relied upon the project's potential impact on property values, the record shows that, while one board member referenced property values as a factor in his decision, the other board members either rejected or did not mention this rationale as a basis for denying the site plan application.  The record includes studies submitted by Dartmouth and prepared by a licensed appraiser who determined that the IPF would not impact the property values of the abutting neighborhood.  Evidence submitted by the abutters refuting this opinion consisted of anecdotal statements and conclusory estimates, without supporting data, from residents and retired or unidentified real estate agents.  Even if the board denied site plan approval based upon the IPF's negative impact on property values, the record fails to include evidence that would reasonably support such a finding.  See Continental Paving, 158 N.H. at 574.  If the board denied the college's application because the IPF would negatively impact property values, its reliance upon this factor goes well beyond the board's personal judgment and experience.  See Condos East Corp. v. Town of Conway, 132 N.H. 431, 438 (1989).  Thus, to the extent that the trial court relied upon this same factor as a basis for upholding the board's decision, the evidence does not reasonably support such a conclusion.

Finally, the abutters argue that the trial court's decision is sustainable because the court reasonably concluded that Dartmouth refused to mitigate the negative impacts of the IPF by, inter alia, placing the IPF on an alternative location within the athletic complex, sinking the building deeper into the ground, reducing its height or otherwise pursuing less impactful alternatives.  The abutters rely upon Bayson Properties v. City of Lebanon, 150 N.H. 167 (2003), as support for the proposition that an applicant's refusal or inability to meet conditions necessary for planning board approval is a sustainable reason for denial.  Bayson Properties, 150 N.H. at 175-76.  The circumstances at issue in Bayson, however, are inapposite to the facts in this case.

In Bayson, we upheld the trial court's finding that the planning board's denial of a site plan application was reasonable when: (1) the board conditioned approval on the development of an additional landscape buffer to abate negative sight, noise and pollution impacts the project imposed on a neighboring elder care facility; and (2) the board's decision included detailed findings of non-compliance with the town's site plan regulations.  Id. at 174-75.

12

In that case, the trial court found that the board's decision was reasonable because an additional landscape buffer was necessary, the applicant refused to meet that condition, and the applicant's offer to reduce pollution by limiting its vendors' deliveries could not be realistically enforced on private vendors. Id. By contrast, in this case, the board did not condition approval of Dartmouth's application on any condition that the college refused to meet. Rather, Dartmouth agreed to comply with all of the conditions the Hanover planning board staff recommended as conditions to site plan approval, and the board did not impose any other conditions as a requirement for approval.

Unlike the circumstances reported in Bayson, the board's decision here fails to include any detailed findings of non-compliance with specific site plan regulations or zoning ordinances. Rather, the record reflects that the planning board staff concluded that the application met all requirements. The record also establishes that the college repeatedly revised its site plan and performed multiple studies to determine and address the IPF's potential impacts on the abutting neighborhood with respect to sound, light, property values and storm water discharges. In its application and its subsequent submissions to the board, Dartmouth repeatedly and reasonably explained why the proposed location of the IPF was the most logical and feasible site to accommodate the new facility. During its final deliberative session, board members repeatedly praised Dartmouth for the time and effort the college devoted to addressing the concerns of its neighbors. On this record, we cannot find that the evidence reasonably supports the trial court's conclusion that the college refused to alter its site plan to address the concerns of the abutters and to comply with Hanover's site plan regulations.

Our review of the record of the board's deliberative session supports Dartmouth's contention that the board unreasonably relied upon personal feelings and ad hoc decision-making in denying the college's application. This record reveals that the board was more concerned with the IPF's scale and height, characteristics governed by specific zoning ordinances, than the building's aesthetics or its allegedly negative impacts on the environs. There is no dispute that the application complies with all of the applicable and specific zoning and site plan regulations. Nonetheless, board member Criswell stated that, for him, "the crux of the matter [is] the scale and proximity of the building to the neighborhood and how those things, in turn, affect[ ] the character." In explaining his vote, board member Mayor concluded simply that the "building itself, in its location as proposed, looms as an affront to the adjacent neighborhood." We recognize that, on appeal, a planning board's factual findings are considered prima facie lawful and reasonable, Motorsports Holdings, 160 N.H. at 99, but the planning board's deliberations in this case cannot logically be considered fact-finding. Rather, the board engaged in ad hoc reasoning characterized by conclusory statements and personal feelings unsupported by the evidence or the applicable regulations.

13

The comments of board member Sims demonstrate the board's reliance on personal feelings and ad hoc judgments to justify its finding that Dartmouth's application did not meet the general considerations:

> [T]here's no data point that can be constructed, in my thinking, that will help us actually measure whether [the IPF is] harmonious and aesthetic [sic].  It comes to be a very personal judgment as to whether or not we think that this building, in fact, meets that standard. . . .  And I have come to the conclusion that I feel that it doesn't meet the standard of being harmonious development and aesthetically — an aesthetically pleasing development, so I will vote to reject the motion [for approval of the application].

(Emphases added.)

It is well settled that a planning board is entitled to rely in part on its own judgment and experience when acting upon applications for site plan approval.  Condos East Corp., 132 N.H. at 438.  Nonetheless, a board's decision must be based on more than the mere personal opinion of its members.  Id.; see also Derry Senior Dev. v. Town of Hebron, 157 N.H. 488, 451 (2008) (board may not deny approval on an ad hoc basis because of vague concerns).  In this case, the certified record fails to reveal any objective evidence supporting the trial court's decision.  Notwithstanding our deferential standard of review afforded to planning board decisions, we cannot, on the record before us, conclude that the evidence reasonably supports the trial court's decision to uphold the board's denial of the application.

Here, the planning board essentially decided that the IPF is: (1) too large and imposing, despite the project's compliance with Hanover's I-District zoning ordinances regulating a structure's height and size; (2) too close to the abutting neighborhood, despite the project's compliance with the unique setback and height restrictions imposed by its proximity to a residential neighborhood; and (3) not a harmonious or aesthetically pleasing fit with the development of the town and its environs, despite the fact that the IPF constitutes a permitted use within a "special district" that not only contemplates large warehouse and recreational facilities, see HZO § 405.6(A), (B), but currently includes two indoor sports facilities of similar sizes.  A planning board cannot supersede the specific regulations and ordinances that control the site plan review process with their own personal feelings and then justify their reasoning through the application of general considerations.  See Summa Humma Enters., 151 N.H. at 78 (site plan review "does not give the planning board the authority to deny a particular use simply because it does not feel that the proposed use is an appropriate use of the land" (quoting Loughlin, supra § 30.09, at 437)).

We do not suggest that site plan review should be reduced to the mechanical process of determining conformity with specific zoning and site

14

plan regulations.  In this case, however, the planning board's reliance solely upon general considerations to override the site plan's conformity with specific regulations and ordinances, without sufficient evidentiary support for doing so, was unreasonable.  Sustaining the board's decision here would sanction a denial of a property owner's site plan application simply because board members felt that the owner's permitted use of its own property was inappropriate.  Such a finding would render zoning "obsolete, as it would afford no protection to the landowner."  Id. at 81 (Nadeau, J., dissenting) (quotation omitted); see also 15 P. Loughlin, New Hampshire Practice, Land Use Planning and Zoning, §30.09, at 556 (2010) ("If the use is permitted by the zoning ordinance, it cannot be barred by the site review process unless the use would create unusual public safety, health, or welfare concerns.").

In light of our decision, we need not address the college's claim that the general considerations are vague or ambiguous.  For the foregoing reasons, we reverse the trial court's order upholding the planning board's denial of Dartmouth's site plan application.  As we previously found, the record establishes that the IPF complies with Hanover's specific zoning ordinances and site plan regulations.  Further deliberations or fact-finding are unnecessary to determine whether the college's application is lawful or reasonable.  Therefore, Dartmouth is entitled to relief which rewards its efforts challenging the legality of the board's decision and prevents retributive action by the municipality.  Britton v. Town of Chester, 134 N.H. 434, 442 (1991).  "'To forsake [the college's] reasonable development plans after all the time, effort and capital invested in such a challenge [would be] grossly inequitable.'" Id. at 443 (quoting Casey v. Zoning Hearing Board of Warwick Township, 328 A.2d 464, 469 (Pa. 1974)).  Thus, we grant Dartmouth's request for the Builder's Remedy provided the college complies with each of the 21 conditions identified by Hanover's planning board staff and considered by the planning board.

Reversed and remanded.

LYNN, C.J., and HICKS and HANTZ MARCONI, JJ., concurred.

15