# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2020-0271, <u>359 Elm Street, LLC v. City of Manchester</u>, the court on May 13, 2021, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case.  <u>See</u> <u>Sup. Ct. R.</u> 18(1).  The plaintiff, 359 Elm Street, LLC (359 Elm), appeals orders of the Superior Court (<u>Messer</u>, J.) upholding the decision of the City of Manchester Planning Board (board) to approve the site plan of the intervenor, Oak Leaf Homes, LLC (Oak Leaf), for construction of a mixed-use apartment building with commercial space and adjacent parking.  On appeal, 359 Elm argues that the trial court erred when it ruled that the board could reasonably have found, based upon the evidence in the record, that the proposed site plan would comply with Section 1.3(F) of the City's site plan review regulations and not cause traffic or safety issues on certain streets used by both parties.  We affirm.

The pertinent facts are as follows.  Oak Leaf owns five adjacent lots that have been merged into an L-shaped parcel located between Elm Street and Willow Street in Manchester.  359 Elm owns an abutting lot that fronts along Elm Street.  To the east of 359 Elm lies Elm Street East Back, a discontinued public way which runs parallel to, and in between, Elm Street and Willow Street.  To the north of 359 Elm lies Green Street, which runs perpendicular to, and connects, Elm Street and Willow Street, intersecting with Elm Street East Back in between.  359 Elm, as well as another abutter not party to this appeal, have loading docks that front along Elm Street East Back, and both hold certain private easement rights over Elm Street East Back related thereto.

In July 2019, following a public hearing held in June 2019, the board granted conditional site plan approval for Oak Leaf's redevelopment of its parcel.  Oak Leaf proposed to build a six-story, mixed-use apartment building fronting along Elm Street, with commercial space on the first floor and 90 apartments on the upper floors, along with 122 parking spaces behind the building.  359 Elm appealed the board's decision to the trial court, <u>see</u> RSA 677:15 (2016), which, after viewing the site and holding a hearing, upheld the board's decision.  The trial court denied 359 Elm's motion for reconsideration, and this appeal followed.

The trial court's review of a planning board's decision is limited.  <u>Trustees of Dartmouth Coll. v. Town of Hanover</u>, 171 N.H. 497, 503-04 (2018); RSA 677:15, V.  "The trial court must treat the factual findings of the planning board

as prima facie lawful and reasonable and cannot set aside its decision absent unreasonableness or an identified error of law." Trustees of Dartmouth Coll., 171 N.H. at 504. "The appealing party bears the burden of persuading the trial court that, by the balance of probabilities, the board's decision was unreasonable." Id. "The trial court determines, not whether it agrees with a planning board's findings, but rather whether there is evidence upon which its findings could have been reasonably based." Id. "Our review is similarly limited. We will reverse a trial court's decision on appeal only if it is not supported by the evidence or is legally erroneous." Id. "We review the trial court's decision to determine whether a reasonable person could have reached the same decision as the trial court based on the evidence before it." Id. (quotation omitted).

On appeal, 359 Elm first argues that the evidence was insufficient to support the trial court's affirmance of the board's decision because Oak Leaf's traffic impact and access study did not analyze traffic impacts on Elm Street East Back, and, although it "analyzed certain intersections of Green Street, it did not analyze internal traffic on Green Street or how safely or efficiently traffic [will] flow on Green Street as vehicles travel from the intersections toward the parking lot or from the parking lot toward the intersections." 359 Elm contends that Section 1.3(F) of the City's site plan review regulations requires such analysis, and that it is especially important in this case because of the potential impact of the increased traffic on 359 Elm's access to and use of its easement rights. We disagree.

As the trial court noted, the City has adopted regulations governing the board's review of site plans. See Manchester, N.H., Subdivision and Site Plan Review Regulations (2017); RSA 674:43, :44 (2016). "The objective of the[] regulations is to protect the public health, safety, and welfare by ensuring the orderly, safe, aesthetically pleasing, and sustainable development of the City of Manchester." Manchester, N.H., Subdivision and Site Plan Review Regulations § 1.3. Section 1.3(F) provides that one of the purposes of the regulations is "[t]o promote safe pedestrian, multi-modal, and vehicular circulation within the development site and onto the adjacent street system by providing streets, walkways, sidewalks, and access points of adequate width, grade, alignment and visibility." Id. at § 1.3(F). Additionally, Section 9.1 authorizes the board to require a traffic impact study under certain conditions, and provides that "[t]he type and scope of the study shall be determined at a scoping meeting with the Planning staff." Id. at §§ 9.1, 9.1(B). If the board is not satisfied with the adequacy of a traffic study, it has the discretion to require additional study. Id. at § 9.1(A).

Here, with respect to Green Street, the trial court found that the traffic study submitted by Oak Leaf "analyzes the 'Impact Area' as determined at the scoping meeting" with the City, and that that area "includes Green Street." These findings are supported by the record. With respect to Elm Street East Back, the

2

trial court found that, because the board had evidence before it indicating that the proposed development would not be accessed using Elm Street East Back, the board reasonably could have determined that an additional study addressing traffic on Elm Street East Back was unnecessary. 359 Elm objects to this finding, arguing that even if Oak Leaf did not intend for Elm Street East Back to serve as a means of access to the development, it should have been included within the scope of the traffic study because it <u>can</u> be used for access, and there is nothing preventing the public from doing so.

Assuming, without deciding, that Elm Street East Back can be used as a means of access to the development, the evidence is still sufficient to support the trial court's finding that "the Planning Board reasonably could have found, based on the evidence and arguments presented to it, that the site would be developed in a safe manner." <u>See</u> <u>Summa Humma Enters. v. Town of Tilton</u>, 151 N.H. 75, 78 (2004) (observing that site plan review is "designed to assure that sites will be developed in a safe and attractive manner and in a way that will not involve danger or injury to the health, safety, or prosperity of abutting property owners or the general public" (quotation omitted)).

As the trial court noted, the record reflects that the primary means of access to the development would be via Green Street. Additionally, the board had before it Oak Leaf's traffic study, the scope of which was determined in consultation with the City at the scoping meeting. Although the study did not specifically analyze Elm Street East Back, the study did analyze the area surrounding it, including the primary points of access to the development, and found that "the redevelopment is expected to have negligible impact on all study area intersections, including the traffic signals adjacent to the site." Based upon the results of Oak Leaf's traffic study, the board's own judgment and experience, <u>see</u> <u>Derry Senior Dev. v. Town of Derry</u>, 157 N.H. 441, 451 (2008) (observing that "the board is entitled to rely upon its own judgment and experience in acting upon applications for site plan review"), and the rest of the record before it, the board could reasonably have concluded that the traffic impact on Elm Street East Back would also be negligible, and that the site would be developed in a safe manner consistent with the City's site plan review regulations. <u>See</u> <u>Manchester, N.H., Subdivision and Site Plan Review Regulations</u> § 1.3(F); <u>Summa Humma Enters.</u>, 151 N.H. at 78 (observing that the purposes of site plan review are "accomplished by subjecting the plan to the very expertise expected of a planning board" (quotation omitted)). Accordingly, we conclude that the trial court did not err in upholding the board's decision with respect to this issue. <u>See</u> <u>Trustees of Dartmouth Coll.</u>, 171 N.H. at 504.

Next, 359 Elm argues that, because "[t]here was no evidence before the Planning Board indicating that Green Street and Elm Street East Back are in sufficient condition to accommodate" the increased traffic, "[t]he Planning Board should have, but did not, require any improvements to Elm Street East Back and

Green Street as a condition of final approval." 359 Elm contends that "[t]he failure of the Planning Board to even consider requiring any improvements . . . will be to the detriment of [359 Elm] and [its] tenants who rely upon these alleyways for access and deliveries."

Here, it is evident from the record that the board considered this issue. As the trial court observed, 359 Elm raised concerns at the planning board meeting with respect to whether any improvements would be made in connection with the project. In response, the board questioned Oak Leaf's counsel, who represented to the board that Oak Leaf would be improving portions of Green Street — the primary point of access to the development. Although 359 Elm contends that Oak Leaf's representation is not binding, the board was entitled to consider it in rendering its decision, and, in any event, we note that Oak Leaf's representation is also supported by the construction plans submitted to the board. Moreover, although the board "has the authority" to impose requirements and conditions in connection with its site plan review, Derry Senior Dev., 157 N.H. at 447, it is not obligated to do so, cf. id.; Bayson Properties v. City of Lebanon, 150 N.H. 167, 175 (2003) (observing that the board "is authorized" to impose conditions); Manchester, N.H., Subdivision and Site Plan Review Regulations § 4.13(A) (noting that the board "may grant approval of an application subject to conditions that the applicant must meet either before or after final approval" (emphasis added)). Accordingly, based upon the evidence before it — which included Oak Leaf's traffic study finding that any traffic impacts on the area would be negligible — the board reasonably could have determined, in the exercise of its judgment and experience, that no additional improvements were necessary in order for the proposed development to comply with the City's site plan review regulations. See Manchester, N.H., Subdivision and Site Plan Review Regulations § 1.3(F); Summa Humma Enters., 151 N.H. at 78. Accordingly, we conclude that the trial court did not err in upholding the board's decision with respect to this issue either. See Trustees of Dartmouth Coll., 171 N.H. at 504.[1]

In sum, based upon our review of the record, we conclude that the trial court's decision is neither unsupported by the evidence nor legally erroneous, and that the trial court did not err when it determined that 359 Elm failed to

---

[1] To the extent that 359 Elm is arguing either that the potential increased use of Elm Street East Back will overburden its easement, or that the lack of certain improvements will compromise its right to use the easement, we agree with the trial court that the appropriate avenue to enforce such private property rights is through a separate private action. See 15 Peter Loughlin, New Hampshire Practice: Land Use Planning and Zoning § 37.09, at 679-80 (2010).

4

carry its burden to demonstrate that the board's decision to grant conditional site plan approval to Oak Leaf was unreasonable.  See id. at 503-04; RSA 677:15, V.

Affirmed.

MacDonald, C.J., and Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Timothy A. Gudas,**
**Clerk**
