## THE STATE OF NEW HAMPSHIRE

## SUPREME COURT

**In Case No. 2020-0251, <u>Seabrook Onestop, Inc. & a. v. Town of Seabrook & a.</u>, the court on September 16, 2021, issued the following order:**

Having considered the briefs and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case. The plaintiffs, Seabrook Onestop, Inc. (Seabrook Onestop) and other Seabrook property owners, including other gas station owners or operators, appeal an order of the Superior Court (<u>Schulman</u>, J.) upholding decisions of the zoning board of adjustment (ZBA) and planning board for defendant Town of Seabrook (Town) regarding the request by defendant Waterstone Properties, Inc. (Waterstone) to amend its site plan to build a gas station on its property. We affirm.

I. Facts

The relevant facts follow. Waterstone is a developer, acting on behalf of ASKJA Real Estate Holdings, LLC (ASKJA). In 2013, ASKJA purchased a 19-acre lot in Seabrook located in the heart of Seabrook's commercial strip. The lot has frontage on U.S. Route 1 and on Provident Way, a class V or better highway. That section of Route 1 contains box stores, fast food restaurants, shopping centers, gas stations, and other commercial enterprises. ASKJA's lot benefited from a 2004 variance, which made the entire lot part of the commercial zoning district. Gas stations are permitted uses in the commercial zoning district.

In 2013, ASKJA received site plan approval from the planning board to develop a large shopping center on the lot. Four years later, in 2017, Waterstone, acting on ASKJA's behalf, obtained approval to subdivide the lot by carving out a one-acre lot suitable for a commercial use and associated parking. For ease of reference, we refer to the one-acre lot as the "New Lot" and the remaining 18 acres as the "Main Lot."

Before it could obtain subdivision approval, Waterstone needed variances to render the New Lot buildable. Specifically, Waterstone sought variances from the requirements that the New Lot have frontage on a public way, that an existing building on the Main Lot be set back from the New Lot's boundary, and that a proposed building on the New Lot be set back from the Main Lot's boundary. The ZBA granted these variances in October 2017, and its decision was not appealed. Thereafter, the planning board approved Waterstone's

subdivision. As a result, the New Lot was created as a saleable, buildable, commercial lot with a deeded easement to use the driving lanes of the Main Lot to access Provident Way. The planning board's subdivision approval also was not appealed.

In 2018, Waterstone sought planning board approval to amend the 2013 site plan. Although the 2013 plan indicated that a "retail building" would be constructed in the area of the New Lot, the amended plan proposed that a gas station be constructed instead. The gas station would have six gas pumps under a canopy, underground storage tanks, a 400-square-foot kiosk and associated generator, a self-service air pump, and nearby parking. BJ's Wholesale Club (BJ's) would operate the gas station. The gas station was designed to serve only BJ's members.

The planning board held public hearings on the amended plan. The plaintiffs objected to it. The planning board rejected the plaintiffs' arguments and approved the amended site plan with conditions. Two of the conditions required that the plan depict all wells that are within 250 feet, and that Waterstone obtain all requisite approvals from the New Hampshire Department of Environmental Services or "any other party."

The plaintiffs simultaneously appealed the planning board's conditional approval to the ZBA and the superior court. The ZBA denied the plaintiffs' appeal and subsequent motion for rehearing. The plaintiffs then appealed the ZBA's decision to the superior court. The trial court consolidated the plaintiffs' appeals. The court issued a 37-page, well-reasoned, detailed order upholding the planning board and ZBA decisions. The plaintiffs unsuccessfully moved for reconsideration, and this appeal followed.

II. Analysis

Our review of the superior court's decision on appeals arising from a decision of a planning or zoning board is limited. See Girard v. Town of Plymouth, 172 N.H. 576, 581 (2019) (planning board); Dietz v. Town of Tuftonboro, 171 N.H. 614, 618 (2019) (ZBA). We will reverse the trial court's decision only if it is not supported by the evidence or is legally erroneous. Trustees of Dartmouth Coll. v. Town of Hanover, 171 N.H. 497, 504 (2018) (planning board); Rochester City Council v. Rochester Zoning Bd. of Adjustment, 171 N.H. 271, 275 (2018) (ZBA). We review the trial court's decision to determine whether a reasonable person could have reached the same decision as the trial court based on the evidence before it. Girard, 172 N.H. at 582.

The trial court's review of ZBA and planning board decisions is also limited. The trial court must uphold a ZBA or planning board decision unless there is an error of law or the court is persuaded by the balance of probabilities

that the decision was unreasonable.  See RSA 677:6, :15, V (2016).  The trial court must treat factual findings of the planning board or ZBA as prima facie lawful and reasonable.  Id.  The review by the trial court is not whether it agrees with the findings of the ZBA or planning board, but whether there is evidence upon which those findings could have been reasonably based.  Trustees of Dartmouth Coll., 171 N.H. at 504; Rochester City Council, 171 N.H. at 275.

### A.  ZBA Decision

On appeal, the plaintiffs first argue that the trial court erred by upholding the ZBA's decision because it failed to satisfy RSA 676:3 by stating only that the ZBA "support[ed] [the] Planning Board decision."  See RSA 676:3 (2016) (requiring a "local land use board" to provide an applicant "with written reasons" when the board disapproves "an application for a local permit" and requiring the board's "written decision containing the reasons therefor" to be available for public inspection).  Here, however, the plaintiffs appealed only issues of law to the ZBA, which the superior court reviewed de novo.  Under these circumstances, we discern no error in the trial court's review despite the ZBA's failure to further explain its decision.  See Kalil v. Town of Dummer Zoning Bd. of Adjustment, 155 N.H. 307, 313 (2007).

### B.  Planning Board Decision

The plaintiffs next assert that the trial court erroneously upheld the planning board's conditional approval because: (1) the 2017 variances were void; (2) using the New Lot for a gas station is outside the scope of those variances; (3) the conditional approval violated RSA 674:41; and (4) the board failed to sufficiently address the plaintiffs' concerns about traffic and well contamination.  We consider each argument in turn.

#### 1.  Validity of 2017 Variances

The plaintiffs first argue that, because it required fact-finding, the trial court erred when it decided, in the first instance, that the 2017 variances were valid even though Seabrook Onestop failed to receive statutory notice.  See RSA 676:7, I(a) (Supp. 2020) (requiring that notice of the ZBA's hearing on a variance request must be given to "[e]very abutter . . . by verified mail . . . not less than 5 days before the date fixed for the hearing"); see Hussey v. Town of Barrington, 135 N.H. 227, 232 (1992) (explaining that a variance granted when statutory notice was not given to an abutter is "void from the very date on which it was issued").  The validity of the 2017 variances presents a question of law.  Therefore, we conclude that the trial court did not err by addressing the question of validity.

3

Alternatively, the plaintiffs assert that the superior court erred by determining that Seabrook Onestop was not an "abutter" entitled to statutory notice of Waterstone's variance application and the hearing(s) thereon. See RSA 676:7, I(a). We disagree.

RSA 672:3 defines an "abutter" for the purposes of statutory notice as "any person whose property is located in New Hampshire and adjoins or is directly across the street or stream from the land under consideration by the local land use board." RSA 672:3 (2016). The trial court determined that Seabrook Onestop "was not an abutter for notice purposes" because its lot "sits catty-corner, or indirectly, across Route 1 from the Main Lot." (Emphasis omitted.)

The plaintiffs argue that, even though Seabrook Onestop's lot is "diagonally across the street" from the Main Lot, it was an "abutter" under RSA 672:3. However, as the trial court correctly explained, being "diagonally across the street" is not the same as being "directly across the street." We have reviewed the plaintiffs' remaining arguments on this issue and conclude that they warrant no further discussion. See Vogel v. Vogel, 137 N.H. 321, 322 (1993). We, therefore, uphold the trial court's determination that the 2017 variances are valid despite the lack of statutory notice to Seabrook Onestop.

## 2. Scope of the Variances

The plaintiffs next assert that, because it required fact-finding, the trial court erred by deciding, in the first instance, that using the New Lot for a gas station falls within the scope of the 2017 variances. Although, generally, determining the scope of a variance presents a question of fact, see 1808 Corp. v. Town of New Ipswich, 161 N.H. 772, 775 (2011), here, it is a question of law. See In the Matter of Patient & Patient, 170 N.H. 252, 254 (2017) (explaining that the interpretation of written documents presents a question of law). Accordingly, the trial court did not err by addressing the question of validity.

Alternatively, the plaintiffs contend that the trial court decided the issue incorrectly. We disagree. Using the New Lot for a gas station was not outside the scope of the 2017 variances as a matter of law.

The scope of the 2017 variances did not concern the use to which the New Lot would be put. Rather, those variances only granted Waterstone equitable relief from dimensional requirements. Indeed, no equitable relief to use the lot for a gas station was necessary. Pursuant to the 2004 variance, Waterstone's entire lot is in the commercial zoning district where gas stations are permitted uses. Under these circumstances, using the New Lot for a gas station was not outside the scope of the 2017 variances. The plaintiffs' remaining arguments on this issue do not warrant any further discussion. See Vogel, 137 N.H. at 322.

4

### 3. RSA 674:41

The plaintiffs next contend that, because access to the New Lot fails to satisfy RSA 674:41, the planning board acted unreasonably by approving the amended site plan, and the trial court erred by upholding that decision. We disagree.

RSA 674:41 governs the issuance of building permits. See RSA 674:41 (2016). It provides, in pertinent part, that "no building shall be erected on any lot within any part of the municipality nor shall a building permit be issued for the erection of a building unless the street giving access to the lot" meets certain requirements. RSA 674:41, I. The "street giving access to the lot" refers to "a street or way abutting the lot and upon which the lot has frontage." RSA 674:41, III. The phrase "street giving access to the lot" does not "include a street from which the sole access to the lot is via a private easement or right-of-way, unless such easement or right-of-way also meets the criteria set forth in subparagraph I(a), (b), (c), (d), or (e)." Id. If the street giving access to the lot is a private road, a building permit may be issued provided that, among other requirements, "[t]he local governing body . . . has voted to authorize the issuance of building permits for the erection of buildings on said private road or portion thereof." RSA 674:41, I(d)(1).

The plaintiffs argue that access to the New Lot does not satisfy RSA 674:41 because "the sole access to the lot is via a private easement." Even if this is the case, however, the planning board was not precluded from conditionally approving Waterstone's amended site plan.

Compliance with RSA 674:41 was a condition subsequent to the planning board's approval of Waterstone's amended site plan. See Prop. Portfolio Group v. Town of Derry, 154 N.H. 610, 615 (2006). The planning board's approval was expressly conditioned upon Waterstone obtaining "[a]ll approvals that are required from . . . any . . . party." Because compliance with RSA 674:41 was a condition subsequent, it need not have been fulfilled before the planning board could conditionally approve Waterstone's amended site plan. See id. at 615-16 (explaining that a condition subsequent does not delay site plan approval). Accordingly, even if, as the plaintiffs argue, access to the New Lot fails to satisfy RSA 674:41, the planning board did not act unreasonably by conditionally approving Waterstone's amended site plan, and the trial court did not err by upholding that approval.

### 4. Traffic and Setbacks from Wells

The plaintiffs next argue that the trial court "act[ed] unlawfully and unreasonably" by upholding the planning board's decision because the board failed to sufficiently address their concerns about traffic and well contamination. They assert that to have adequately addressed the plaintiffs'

5

traffic concerns, the planning board should have discussed "measures to direct gas station traffic to Provident Way" and "traffic control measures . . . relative to the main parking area." Although the planning board imposed a condition that all wells located within 250 feet be added to the site plan, the plaintiffs argue that the board should have "establish[ed] [a] consequence should any private well be located within 250 feet of a tank." The trial court's role in this case was not to sit as a super planning board. Its review was limited by statute. See RSA 677:15, V. Based upon our review of the record submitted on appeal, we conclude that a reasonable person could have reached the same decision as the trial court based on the evidence before it. Girard, 172 N.H. at 582.

For all of the above reasons, we affirm the trial court's decision.

Affirmed.

MACDONALD, C.J., and HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.

**Timothy A. Gudas,
Clerk**